# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ALLEN W. KICHLER and<br>MELINDA J. KICHLER,<br><br>      Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., *a national banking association, a California corporation doing business as* Wells Fargo Home Mortgage, Inc.,<br><br>      Defendant. | Civil No. 12-1206 (JRT/AJB)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER GRANTING<br>WELLS FARGO'S MOTION FOR<br>SUMMARY JUDGMENT** |

  Erich J. S. Hartmann, **DANIELS & KIBORT, PLLC**, 3165 Fernbrook Lane North, Plymouth, MN 55447, for plaintiffs.

  Ellen B. Silverman and James S. Fuller, **HINSHAW & CULBERTSON LLP**, 333 South Seventh Street, Suite 2000, Minneapolis, MN 55402, for defendant Wells Fargo Bank, N.A.

  Plaintiffs Allen and Melinda Kichler received two home equity revolving lines of credit from Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in 2005. The Kichlers now bring a claim of negligent misrepresentation against Wells Fargo, arguing that Wells Fargo did not fully and accurately disclose or explain the terms of the loans. The Court will grant Wells Fargo's motion for summary judgment. Although the Kichlers bring two theories of negligent misrepresentation, both must fail: one theory is barred by the statute of limitations; for the other theory, the Kichlers did not identify a duty of care.

## BACKGROUND

In March 2005, the Kichlers entered into agreements with Wells Fargo providing them with two home equity revolving lines of credit. (*See* Decl. of Ellen B. Silverman ¶¶ 2, 4 & WF000001-WF000019, WF000029-WF000048, Apr. 26, 2013, Docket No. 30.) The first loan had a credit line limit of $211,200.00. (*Id.* at WF000029.) The agreement and disclosure statement for the first loan was signed by the Kichlers and dated March 9, 2005, and it included an acknowledgement stating they had "received" and "read" the agreement. (*Id.* at WF000047-WF000048.) The agreement included a paragraph that described the loan as a "revolving account" having both a "Draw Period" and a "Repayment Period." (*Id.* at WF000030.) The agreement stated that the "Fixed Rate Initial Advance"[1] would have a "fixed interest rate of 5.625%" and monthly payments for sixty months. (*Id.* at WF000030). The agreement also provided that "[a]fter the Fixed Rate Initial Advance term, any such remaining balance will be subject to the FINANCE CHARGES as described in the Line of Credit Advance(s) Finance Charge section[.]" (*Id.*) The Line of Credit Advance(s) Finance Charge section provided that the "Line of Credit interest rate is tied to an Index . . . and may change for each monthly billing cycle." (*Id.* at WF000032.) The maximum annual percentage interest rate on the Kichlers' line of credit was 12%. (*Id.* at WF000033.)

The second loan had a credit line limit of $52,800.00. (*Id.* at WF000001.) The agreement and disclosure statement for this loan was also signed by the Kichlers and

---

[1] The agreement provided "3 types of advance methods": "Fixed Rate Initial Advances," "Line of Credit Advances," and "Fixed Rate Advance(s)." (Silverman Decl. at WF000030.)

dated March 9, 2005, and it included the same acknowledgement stating they had "received" and "read" the agreement. (*Id.* at WF000018-WF000019.) This agreement also described the loan as a "revolving account" having both a "Draw Period" and a "Repayment Period." (*Id.* at WF000002.) According to the agreement, the finance charge on this line of credit would be adjusted according to the index rate published in the Wall Street Journal, and the agreement stated, "I understand that any increase may cause me to make larger monthly payments." (*Id.* at WF000003.) The agreement also provided the annual percentage rate would not be less than 4.24% or greater than 18%. (*Id.* at WF000004.) The "Draw Period" on this line of credit was ten years (*id.* at WF000002), at the end of which the Kichlers' monthly payment would be calculated by the bank so that the full balance would be repaid in fifteen or thirty years (*see id.* at WF000006).

Wells Fargo presents evidence, which the Kichlers do not dispute, that when the Kichlers applied for the loans it provided them with additional disclosures including "Important Terms of Wells Fargo SmartFit Home Equity Account [SM] (Secured by Your Home)," explaining the draw and repayment periods, including examples. (Silverman Decl. ¶¶ 10-13 & WF000321- WF000329.) The Kichlers also received "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit." (*Id.* at WF0000336-WF000342.) This disclosure included a section entitled "Lines of Credit vs. Traditional Second Mortgage Loans" (*id.* at WF000338-339) and included the following statements:

- o "Once approved for a home equity line of credit, you will most likely be able to borrow up to your credit limit whenever you want." (*Id.* at WF000336.)
- o "Home equity lines of credit typically involve variable rather than fixed interest rates." (*Id.* at WF000337.)
- o "When you open a home equity line, the transaction puts your home at risk." (*Id.* at WF000339.)

The Kichlers maintain that Wells Fargo did not "deal honestly" with them and did not accurately and fully explain the loans. (Compl. ¶¶ 80-81, May 18, 2012, Docket No. 1.) Specifically, the Kichlers maintain that Wells Fargo did not tell them they would be able to pay down the principal balance and borrow against it again. (Aff. of Melinda J. Kichler ¶ 8, May 20, 2013, Docket No. 35.) The Kichlers also contend that because they immediately borrowed the full amount of credit (*id.* ¶ 10), "the bank knew that we would not take any future advances on the loan" (*id.* ¶ 11).

The Kichlers knew that they were taking out home equity credit loans in March 2005.[2] (*See* Kichler Aff. ¶ 2.) Indeed, the Kichlers had refinanced their home multiple times since purchasing it in 1999 (Compl. ¶¶ 5-12), including closing on a home equity

---

[2] Home equity credit may take one of two forms. Glenn B. Canner *et al.*, *Recent Developments in Home Equity Lending*, 84 Fed. Res. Bull. 241, 241 (1998). The first, a traditional home equity loan or a **closed-end loan**, is extended for a specified length of time, requires repayment of interest and principal in monthly installments, and ordinarily has an interest rate fixed for the life of the loan. *Id.* The second, a home equity line of credit or **open-end loan**, is a revolving account that permits borrowing from time to time up to the amount of the credit line and has a more flexible repayment schedule. *Id.* at 241-42. Home equity lines of credit typically have interest rates that vary with changes in an index rate. *Id.* at 242.

line of credit for $50,000 in February 2004 (*id.* ¶ 11). The Kichlers extended this line of credit later in 2004 to $65,000. (*Id.* ¶ 12.) The Kichlers now contend that they did not understand in March 2005 that they were taking out a home equity line of credit (also known as an open-end loan) instead of a traditional home equity loan (also known as a closed-end loan). (*See* Kichler Aff. ¶¶ 4-5 (noting the Kichlers did not anticipate borrowing money multiple times or understand that the structure of the loan allowed them to do so).) The Kichlers also maintain that they did not know the interest rate on the loans was adjustable until 2010. (*Id.* ¶ 13.)

The Kichlers filed this action against Wells Fargo in Sherburne County and served the complaint on April 20, 2012. Wells Fargo timely removed the action to this Court. In April 2013, on stipulation from the parties, the Court dismissed Counts II through V. (Order, Apr. 15, 2013, Docket No. 24.) Wells Fargo now moves for summary judgment on the only remaining claim, Count I, alleging "Negligent & Constructive Misrepresentation."[3]

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to

---

[3] Because the Kichlers do not define or address "constructive" misrepresentation; the Court will address only their negligent misrepresentation claim.

return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate[4] if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247-49).

## II. NEGLIGENT MISREPRESENTATION

To prove negligent misrepresentation, the Kichlers must prove, among other elements, that Wells Fargo "'supplied false information for the guidance of others in their business transactions' and in doing so 'failed to exercise reasonable care or competence in obtaining or communicating the information.'" *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (alterations omitted) (quoting *Florenzano v. Olson*, 387 N.W.2d

---

[4] The Kichlers cite an old formulation of summary judgment suggesting that "summary judgment is an extreme remedy." (Pls.' Mem. in Opp. at 9, May 17, 2013, Docket No. 34 (citing *Carlson v. Lake Superior Pilots Ass'n, Inc.*, 198 F. Supp. 855, 857 (D. Minn. 1961).) This standard for summary judgment has been rejected. *See, e.g.*, *Chicago Ins. Co. v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 929 F.2d 372, 374 n.4 (8th Cir. 1991).

168, 174 n.3 (Minn. 1986)).  More recently, the Minnesota Supreme Court rephrased this standard as follows:

> To prevail on a negligent misrepresentation claim, the plaintiff must establish: (1) a duty of care owed by the defendant to the plaintiff; (2) the defendant supplies false information to the plaintiff; (3) justifiable reliance upon the information by the plaintiff; and (4) failure by the defendant to exercise reasonable care in communicating the information.

*Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012).  The defendant can supply false information "either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992).

The Kichlers present two main bases for their negligent misrepresentation claim: (1) Wells Fargo owed the Kichlers a common law duty which it breached by falsely representing the loan terms; and (2) the transaction was actually a closed-end credit transaction (because the parties only contemplated one transaction) and so Wells Fargo breached its statutory duty under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.,* to provide them the disclosures required for closed-end credit transactions.

### A. Common Law Duty

The Kichlers base one of their theories of negligent misrepresentation on the grounds that Wells Fargo breached its common law duty to accurately disclose the loan terms.  "The essential question in determining whether a defendant owes a duty is 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Safeco Ins. Co. of Am. v. Dain Bosworth Inc.*, 531 N.W.2d 867, 871 (Minn.

Ct. App. 1995) (quoting *L&H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 378 (Minn. 1989)).

Lenders owe no fiduciary duty to a borrower unless the "bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 623 (Minn. 1972); *Hurley v. TCF Banking & Sav., F.A.*, 414 N.W.2d 584, 587 (Minn. Ct. App. 1987) ("Generally, a bank is not in a fiduciary relationship with a customer, rather the relationship is one of debtor and creditor."). The Kichlers do not allege any special relationship with Wells Fargo to support a fiduciary relationship.[5] Thus, the Court finds that the Kichlers have failed to raise a genuine issue of material fact with respect to Wells Fargo's common law duty, and this theory of negligent misrepresentation must fail.[6]

### B. Open-End Versus Closed-End Transaction

The Kichlers' other theory of negligent misrepresentation is that Wells Fargo breached its statutory duty during 2005 by omitting the disclosures required for closed-end credit transactions. Claims for negligent misrepresentation are subject to Minnesota's general six-year statute of limitations. Minn. Stat. § 541.05, subd. 1; *see*

---

[5] *See also Roers v. Countrywide Home Loans, Inc.*, No 10-3107, 2012 WL 3568954, at *2 (D. Minn. Aug. 17, 2012).

[6] It is also likely that this claim would fail because it was not filed within the six year statute of limitations. Whatever Wells Fargo's alleged common law duty, the statute of limitations would have begun to run when that duty was breached, presumably no later than the time of closing on the loans at issue. The statute of limitations would, therefore, have expired before the Kichlers brought their claim. *See* Part II.B, *infra*.

*also Hope v. Klabal*, 457 F.3d 784, 790 (8th Cir. 2006). Yet the Kichlers brought their negligent misrepresentation claim more than six years after closing on the loans at issue. The Kichlers argue that the discovery rule tolled the statute of limitations. In the alternative, the Kichlers suggest that the summary judgment should be precluded because of fraudulent concealment.[7]

### 1. Discovery Rule

The Kichlers argue that because they did not discover the "Loans' unsuitability until 2010," they did not know of their claim until then, and the statute of limitations did not begin to run until they discovered their claim. (Pls.'s Mem. in Opp. at 20, May 17, 2013, Docket No. 34.) "The general rule is that ignorance of a cause of action which does not involve **continuing** negligence or trespass or fraud does not prevent the running of the statute of limitations." *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) (emphasis added). Nevertheless, Minnesota's "discovery rule" provides that the cause of action for negligent misrepresentation does not accrue and the statutory period does not begin to run until "the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006); *Alliance Bank v. Dykes*, Nos. A12-0455, A12-0485, A12-0486, 2012 WL 6734457, at *10 (Minn. Ct. App. Dec. 31, 2012). Thus, the six-year

---

[7] The Kichlers also suggest in their briefing that the statute of limitations is subject to equitable tolling. (Pls.' Mem. in Opp. at 19 (citing *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177 (D. Minn. 1999) (addressing equitable tolling in the context of **federal** statutes of limitations)).) But the Kichlers' arguments related to equitable tolling are directed to Truth in Lending Act claims – which the Kichlers are not actually asserting.

period does not begin to run until the facts constituting negligent misrepresentation "were discovered or, by reasonable diligence, should have been discovered." *Toombs*, 361 N.W.2d at 809; *see also Micom Corp. v. Idea Courier, Inc.*, No. C4-95-698, 1995 WL 687689, at *3 (Minn. Ct. App. Nov. 21, 1995). The Kichlers bear the burden of proving reasonable diligence, *Micom*, 1995 WL 687689, at *3, but when the underlying facts "reasonably should have been discovered is . . . a question of fact," *Toombs*, 361 N.W.2d at 809.

The Court finds that, to the extent their negligent misrepresentation claim is based on Wells Fargo's failure to produce the correct disclosures, the Kichlers were not diligent in discovering their cause of action. The only evidence of diligence the Kichlers identify is that they listened to the explanation of the documents given to them at their closing. To the extent that Wells Fargo provided them with the wrong disclosures, this disparity was discoverable in the documents the Kichlers signed at closing. Similarly, the variable interest rates applicable to the two loans, which the Kichlers maintain they were unaware of until 2010, was discoverable by reading the documents the Kichlers signed at closing – and contemporaneously acknowledged that they had read.

### 2. Fraudulent Concealment

The Kichlers also argue that the doctrine of fraudulent concealment applies and would toll the statute of limitations. "[W]hen fraudulent concealment occurs during a fiduciary relationship, the plaintiff need not show affirmative acts of concealment as a prerequisite to tolling the statute of limitations." *Cohen v. Appert*, 463 N.W.2d 787, 790

(Minn. Ct. App. 1990). In the absence of a fiduciary relationship, however, the plaintiff must show "something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Id.* "The doctrine of fraudulent concealment is very similar to the discovery rule that tolls the limitations period for a fraud cause of action. In both cases, reasonable diligence is a question of fact." *Id.* at 791.

As noted above, the Kichlers have not demonstrated that a fiduciary relationship existed between them and Wells Fargo. Nor do the Kichlers identify any actions by Wells Fargo "designed to prevent" them from discovering the true nature of the loans. *See id.* at 790. The Kichlers also fail to present any evidence of reasonable diligence. Consequently, the Court concludes that the doctrine of fraudulent concealment does not operate to toll the statute of limitations.

Both of the Kichlers' theories of negligent misrepresentation fail, one for failure to identify a duty and one for non-compliance with the statute of limitations. The Court will, therefore, grant Wells Fargo's motion for summary judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Wells Fargo Bank, N.A.'s Motion for Summary Judgment [Docket No. 26] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 9, 2013  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge